TRASE V. MAINZ *vs.* BENEDICT B. LEDERER.

PROVIDENCE—MARCH 14, 1902.

PRESENT : Stiness, C. J., Tillinghast and Rogers, JJ.

(1)  *Breach of Promise of Marriage.   Contracts.   Torts.   Attachment.
Process.*

In an action of assumpsit for breach of promise of marriage, an attachment will not lie.

(2)  *Attachments.*

In order to warrant an attachment, the cause of action must be based upon a contract where the damages, although they may be unliquidated are yet susceptible of estimation and determination by a jury under the ordinary and well understood commercial and business rules which apply to contracts proper.

ASSUMPSIT for breach of promise of marriage.   Heard on motion to dissolve an attachment by mesne process.   Motion granted.

TILLINGHAST, J.   The only material facts in this case, which is an action of assumpsit for breach of promise of marriage, are as follows :   The original writ was issued on October 12, 1897, and was a writ of summons.

Upon the trial of the case in the Common Pleas Division, in October, 1898, a verdict was rendered in favor of the plaintiff, and her damages were assessed in the sum of $12,500. Thereafterwards, on the 24th day of July, 1899, and pending

the defendant's petition for a new trial, the plaintiff sued out of said Common Pleas Division a writ of mesne process which commanded the attachment of the goods and chattels and real estate of the defendant, to the value of $50,000, which writ was served by attaching said real estate of the defendant in the city of Providence.

The defendant thereupon filed a motion in the Common Pleas Division that said writ of attachment be dismissed and that the service thereof be set aside, which motion was duly heard by said Division, and on the 27th day of April, 1901, was denied. The defendant duly excepted to the ruling, and the case is now before us upon the question as to whether it was correct.

The grounds of the defendant's objection to the ruling complained of are, substantially, (1) that a writ of mesne process cannot be a writ of attachment unless the action could have been commenced by a writ of attachment; (2) that the General Laws of Rhode Island do not authorize writs of attachment to be issued in actions for breach of promise of marriage; (3) that the plaintiff in an action for breach of promise of marriage cannot properly make the affidavit required by the General Laws to be made before a writ of attachment can issue; and (4) that the issuing of said writ is an abuse of the process of the court and hence should be dismissed, the service thereof set aside and the attachment made thereon dissolved.

Gen. Laws R. I. cap. 252, § 14, provides as follows: "An original writ commanding the attachment of the real or personal estate of the defendant, including his personal estate in the hands or possession of any person, copartnership or corporation as the trustee of the defendant and his stock or shares in any banking association or other incorporated company, may be issued from the common pleas division of the supreme court or any district court, whenever the plaintiff in the action to be commenced by such writ, his agent or attorney, shall make affidavit, to be endorsed thereon or annexed thereto, that the plaintiff has a just claim against the defendant that is due, upon which the plaintiff expects to

recover in such action a sum sufficient to give jurisdiction to the court to which such writ is returnable."

Section 17 of the same chapter provides that: "The plaintiff in any action may, as often as may be necessary, at any time before final judgment in such action, sue out of the court in which the action shall have been commenced, a writ of mesne process, commanding the attachment of the real or personal estate of the defendant, etc., . . . *provided*, the plaintiff, his agent or attorney, shall make affidavit to be endorsed on or annexed to said writ, setting forth facts which would authorize an attachment . . . upon an original writ."

The plaintiff's attorney made the statutory affidavit on said writ of mesne process, and it was then served as aforesaid.

It will at once be seen from the foregoing statement of facts, that the only question which is presented for our decision is whether an attachment can legally be made in an action for breach of promise of marriage. If it can be, then the ruling complained of was correct and should be sustained; but if it cannot be, then the ruling was erroneous and should be reversed.

(1) Contrary to our first impressions, we are of the opinion, after careful and diligent consideration of the question raised, that under our statute an attachment will not lie in an action of this sort.

True, it is an action based on contract, but the contract is wholly unlike any other in that the damages for a breach thereof are not measured by any commercial or business standard, but are governed almost exclusively by those rules which are applicable to tort actions, and rest almost absolutely in the judgment of the jury. Thus, the law allows punitive or vindictive damages to be assessed in such cases. *Johnson* v. *Jenkins*, 24 N. Y. 252; *Thorn* v. *Knapp*, 42 N. Y. 474. And all the circumstances attending the breach before, at the time, and after, may be given in evidence in aggravation of damages. *Baldy* v. *Stratton*, 11 Pa. St. 316; *Tubbs* v. *Van Kleek*, 12 Ill. 446; *Reed* v. *Clark*, 47 Cal. 194; 1 Wait Act. & Def. 727.

Again, the plaintiff may, in such an action, for the purpose of enhancing her damages, prove that she announced the fact of her engagement to her friends and invited them to attend the wedding. *Reed* v. *Clark, supra.* So the length of time a marriage engagement existed has been held to be a proper element of damage for the breach thereof. *Grant* v. *Willey,* 101 Mass. 356.

A defence to such an action, that the plaintiff is unchaste, if not established at the trial, may be considered by the jury in aggravation of damages. *Southard* v. *Rexford,* 6 Cow. 654 ; *Davis* v. *Slagle,* 27 Mo. 600.

Seduction may also be proved in aggravation of damages. *Mainz* v. *Lederer,* 21 R. I. 370.

There may also be given in evidence in such a case, and the jury may take into consideration in estimating the damages, as said by this court in *Drury* v. *Merrill,* 20 R. I. 2, "the defendant's wealth, his social position, the length of the engagement, the depth of the plaintiff's devotion, her lack of independent means, her mortification and injured feelings, and affections, her altered social position in relation to her home and family, due to his conduct, and her expenses in preparation for the marriage."

These and many other illustrations which might be given, show that while the action is based upon contract, it is really an action by itself and partakes almost entirely of the nature of a tort in everything that pertains to the real object thereof.

We have been unable to find many cases bearing directly upon the question involved, but all of the cases which have come to our knowledge, with one exception, sustain the general position taken by the defendant's counsel. Thus, in *Maxwell* v. *McBrayer,* Phillips (N. C.), 527, the court quashed the writ of attachment in a case of this sort. Battle, J., in delivering the opinion of the court, said : "The damages which a jury might assess for the breach of such a contract, are quite as uncertain as those which might be given for a trespass for an assault and battery on the person, and the amount of them as a debt can no more be sworn to by the

plaintiff, his attorney or agent, in the one case than in the other."

In *Conley* v. *Creighton*, 5 Am. L. Rec. 424 (Ohio), the court said : " The action for breach of promise of marriage, though nominally an action founded on the breach of a contract, presents a very strong exception to the general rules which govern contracts. The action is given as an indemnity to the injured party for the loss she has sustained, and has been always held to include the injury to the feelings, affections, and wounded pride, as well as the loss of marriage. From the nature of the case it has been found impossible to fix the amount of compensation by any precise rule, and, as in tort, the measure of damages is a question for the sound discretion of the jury in each particular instance. Sedg. Dam. 455. The very object of the action is to fix the amount of the claim, and the amount can never be known in any other way. How, then, can a plaintiff swear to any ? How much shall be set down to the account of injured feelings, and affections, and wounded pride, and how much as the value of the lost marriage ? I confess myself as being wholly unable to regard such a claim as a demand within the meaning of the statute."

This case was afterwards affirmed by the Superior Court of Cincinnati,.General Term. Vol. 2, Weekly Law Bulletin, 379.

In Kneeland on Attachment, the author, in speaking of cases of this sort, says : " There are a class of actions arising nominally on contract that partake nevertheless, of the nature of personal tort, and should be classed with that family. . Principal in this class is the action for the breach of promise of marriage. The contract is not in any sense a pecuniary one, although the only remedy for the breach allowed by the law is money. The measure of damages, however, is governed by the circumstances of each particular case, and is entirely in the discretion of the jury the same as in ordinary actions for personal tort. Both the nature of the action and the rule of damages exclude the right of attachment in such actions, although they arise on contract and are for the recovery of money only."

Shinn on Attachment, vol. 1, § 10, takes substantially the same view, and says that, "unless an attachment for demands arising *ex delicto* is also permitted, attachment for a breach of contract of marriage will generally be denied, and if an attachment has issued in such case, it will be set aside on motion." In support of this statement the author cites the cases of *Barnes* v. *Buck*, 1 Lans. N. Y. 268, which is a very well reasoned case upon the question involved.

In *Price* v. *Cox*, 83 N. C. 261, it was held that attachment would not lie in an action of this sort. Smith, C. J., in speaking of this form of action, said : "It is in its essential features an action for the redress of a personal injury like one for defamation, or an assault and battery, and we see no reason for admitting the process of attachment in the one case that does not apply with equal force to the others, nor for putting a construction upon the statute that allows it in any event." See also Addison on Contracts, 8th ed. vol. 2, p. 328 ; Pars. on Cont., 8th ed. vol. 2, p. 73 ; Chit. Pl., 11th Am. ed. vol. 1, p. 67 ; Am. & Eng. Ency. L., 2nd ed. vol. 3, 190 ; *Roelofson* v. *Hatch*, 3ᵗʰ Mich. 277.

The exceptional case hereinbefore referred to, in which an attachment was upheld in a case of this sort, is that of *Morton* v. *Pearman*, 28 Ga. 323. But that case is not pertinent here, because the statute under which the attachment was made authorized suits of attachment "in all cases of money demands, whether arising *ex contractu* or *ex delicto*."

(2)     Similar latitude was given by the statutes of Minnesota in force in 1860. *Davidson* v. *Owens*, 5 Minn. 69. But under our statute we are very clearly of the opinion that in order to warrant an attachment the cause of action must be based upon a contract where the damages, although they may be unliquidated, are yet susceptible of estimation and determination by a jury under the ordinary and well-understood commercial and business rules which apply to contracts proper.

In refusing to grant the motion to dissolve the attachment in question, the justice before whom it was made was probably influenced by some remarks of this court in *Drury* v. *Merrill, supra,* in which a breach of promise of marriage

was involved in one count and a breach of contract growing out of a promissory note was involved in another count. In that case, therefore, it was not necessary to decide whether an attachment would lie in an action for breach of promise of marriage solely ; and hence what was said or intimated in that regard was mere *dictum*. The writer of the opinion in the present case, however, is free to admit that when writing the opinion in that case he was under the impression that an attachment would lie in a case of this sort, on the ground that it was an action *ex contractu*. But more careful study has fully convinced him to the contrary.

The defendant's exceptions are sustained, and the case is remitted to the Common Pleas Division with direction to quash said writ of mesne process and dissolve the attachment made thereon.

*Franklin P. Owen*, for plaintiff.
*Miller & Carroll*, for defendant.