Filed May 14, 1890.

---

No. 14,278.

## JONES v. LAYMAN.

MARRIAGE CONTRACT.—*Breach of.—Competency of Parties to Contract.—Allegation of.*—In an action for the breach of a marriage contract the complaint need not aver that the parties were of marriageable age when the alleged contract was made, as the presumption is, as to all contracts, that the parties are competent to contract until the contrary is shown.

SAME.—*Reciprocal Contract.*—An allegation that "the plaintiff and defendant, on the —— day of ————, agreed to marry one another," is a sufficient averment of a mutual promise to marry.

SAME.—*Character of Plaintiff.—Evidence.*—Where the defendant is permitted to testify to having heard rumors and reports which were calculated to bring the plaintiff into disrepute before the jury, the plaintiff may introduce evidence of her good character for virtue, chastity, and honesty.

SAME.—*Evidence.—Sufficiency of to Show Breach.*—The defendant wrote to the plaintiff, informing her that he had heard reports derogatory to her character, and that he would not visit her until he had investigated them. A month or more elapsed after the receipt of this letter before the plaintiff commenced her suit, the parties in the meantime neither meeting nor communicating with each other.

*Held*, that a breach of the contract was shown.

SAME.—*Declarations of Plaintiff.—Res Gestœ.*—The plaintiff asked a witness, called by her, the following question: "What declaration, if any, did she [plaintiff] make in regard to her disappointment, and refusal of defendant to marry at the time she showed you the letter," and the witness answered as follows: "I was at her house on Saturday, after

she received the letter introduced in evidence from defendant; she showed the letter to me, and asked me what she ought to do about it; William Coffman was along; she wanted to know wnat she had best do; I don't think I gave her any advice; I don't remember what she did say; she appeared to be somewhat troubled about it. She was not shedding tears, but she seemed like her mind was bothered."

*Held,* that the question was improper, as it assumed that the defendant had refused to marry the plaintiff.

*Held,* also, that the declarations contained in the answer, made two days after the receipt of the letter, and in the absence of the defendant, were incompetent, since they formed no part of the *res gestæ.*

BILL OF EXCEPTIONS.—*Evidence.—Concluding Statement as to.*—A statement at the close of a bill of exceptions, that "This was all the evidence introduced upon the trial of said cause," instead of the usual formal statement, "This is all the evidence given in the cause," is sufficient to identify the evidence, the word "introduced," as used, being the equivalent of the word "give."

PRACTICE.—*Motion for New Trial.—Erroneous Instructions.—How Assigned as Error.*—A motion for a new trial assigning as cause that the court erred in refusing to give instructions requested, must designate specifically the instructions relied upon. Where this is not done no question as to the propriety of the instructions is presented to the Supreme Court.

From the Owen Circuit Court.

*D. E. Beem* and *W. Hickam,* for appellant.

*W. A. Pickens,* for appellee.

BERKSHIRE, J.—The appellee sued the appellant, alleging a marriage contract and its breach. The complaint contains two paragraphs; to each the appellant filed a demurrer, and said demurrers being overruled, he reserved exceptions; he then answered the general denial, and the cause being at issue was submitted to a jury, who returned a verdict for the appellee. After the verdict had been returned, the appellant filed a motion for a new trial, which was overruled by the court and he excepted; thereupon the court rendered judgment for the appellee.

The appellant has assigned five several errors; the third is waived for the reason that counsel for the appellant do not advert to it in their brief; the fourth and fifth do not em-

brace such matters as are assignable as error in this court. This leaves but the first and second alleged errors for our consideration. The first error brings in question the action of the court in overruling the demurrers to the complaint; but our attention is called to the fact that it is the sufficiency of the complaint as a whole, and not each separate paragraph thereof, that is called in question; and, therefore, if either paragraph is good the assigned error is unavailing. But waiving all objection to the form of the alleged error, we are of the opinion that each paragraph of the complaint is sufficient as against a demurrer.

It is contended that both paragraphs of the complaint are bad for the reason that they do not aver that the parties were of a marriageable age at the time it is alleged the contract was made, and our attention is called to section 5324, R. S. 1881. There is nothing in this objection. The presumption is, as to all contracts, that the parties were competent to contract until the contrary is made to appear. It might with equal force be contended that the pleading is bad for failing to negative all imaginary disabilities.

But it is contended that the first paragraph is bad because it fails to show that the alleged contract was reciprocal as between the parties. We think otherwise. The first allegation in the paragraph is as follows: " Plaintiff complains of the defendant and says that the plaintiff and defendant, on the — day of April, 1886, agreed to marry one another." The language employed is brief, but we think it distinctly and unequivocally states an agreement of the parties to become husband and wife—one in the flesh—the consent of one being the consideration for the consent of the other.

The paragraphs of complaint which were held good in *Cates* v. *McKinney*, 48 Ind. 562, were not substantially different from the paragraphs here under consideration.

This brings us to the second and only remaining alleged error, that the court erred in overruling the motion for a new trial. But before passing to a consideration of the

questions thereby brought to our attention, it becomes necessary to pass upon a question raised by the appellee preliminary thereto.

It is contended that the evidence produced upon the trial is not properly in the record, and therefore that the said second alleged error brings no question before us for consideration.

In our opinion the point is not well made. The objection rests upon the closing language in the bill of exceptions, which is as follows : " This was all the evidence introduced upon the trial of said cause."

The point made is that the bill of exceptions must purport to contain the evidence given on the trial, and must in unmistakable language identify it as the evidence that was given.

But while it is better and safer to identify the evidence with the usual formal statement, " This is all the evidence given in the cause," it is not absolutely necessary that this language be employed; the equivalent thereof may be employed.

This court has held more than once that the word " introduced," in the connection in which it is used in the bill of exceptions under consideration, is the equivalent of the word " given." *Kennedy* v. *Divine,* 77 Ind. 490; *Stair* v. *Richardson,* 108 Ind. 429 ; *Brock* v. *State, ex rel.,* 85 Ind. 397.

We return to a consideration of the second alleged error.

The only causes which are stated in the motion for a new trial to which counsel call our attention are the first, fourth, sixth, seventh, eighth and tenth.

The seventh cause relates to the instructions given by the court, and the eighth to instructions asked by the appellant and refused.

The seventh cause specifically designates but one of the instructions given, and as counsel for the appellant do not point out in their brief any objection to this instruction its consideration is waived.

The eighth cause designates no particular instruction to which objection is made.

If counsel were insisting in the court below for a new trial because of alleged error of the court in refusing to give instructions asked by the appellant, it was their duty to point out in their motion for a new trial severally and by their respective numbers the instructions relied upon.

The court was not required to take up the instructions asked and refused and read them through one by one for the purpose of ascertaining, if at all, wherein it had erred. No question is before us as to the propriety of the instructions given or refused. *Ohio, etc., R. W. Co.* v. *McCartney,* 121 Ind. 385.

The sixth cause in the motion stated rests upon the ruling of the court in allowing the appellee to introduce evidence of her good character for virtue, chastity and honesty. We think the court committed no error in this ruling.

The appellant went upon the witness-stand and testified to having heard various rumors and reports which, if in circulation, were calculated to bring the appellee into disrepute before the jury trying the cause, and no difference with what purpose the testimony was given, the appellee had a right to meet it before the jury by showing her reputation and standing among her neighbors.

If for no other purpose the testimony was competent as tending to show that what the appellant had stated as to having heard such rumors was not true. But in our opinion the testimony of the appellant put the appellee's character in issue before the jury, and it would be a harsh rule that would not allow her to vindicate her character. *Haymond* v. *Saucer,* 84 Ind. 3.

The tenth reason stated in the motion discusses the sufficiency of the evidence to support the verdict, and the point most earnestly insisted upon is that the evidence fails to disclose a breach of contract on the appellant's part.

The following letter, written by the appellant to the appellee, was in evidence before the jury:

"*Mrs. Mary A. Layman:*

" I will inform you that there is some reports that have come to me; these reports give me trouble.   I will not say what they are—delicacy forbids.   I will not be at your house any more until I investigate whether these reports are true or not.                              Yours truly,

"R. JONES."

This action was not commenced for at least a month after the said letter was written, and during the time that intervened the parties had not met, and had had no communication.   There are some other facts proven, to which we need not call specific attention, which have some bearing on the question under consideration.

When all of the evidence is considered, including the letter, we are not prepared to say that there was no evidence to show a breach of the contract, if a contract existed between the parties.

The first reason stated in the motion calls in question the ruling of the court in permitting the following question to be propounded by the appellee to one James Minnick, a witness called by her, and in allowing the witness to answer the question, " What declaration, if any, did she make in regard to her disappointment, and refusal of defendant to marry, at the time she showed you the letter ?"

The appellant objected to the question, for two reasons : (1)  It assumed that the appellant had refused to marry the appellee ; (2) The declarations asked for were made in the absence of the appellant, and several days after the appellee had received the letter.

The witness answered the question as follows :   " I was at her house, on Saturday after she received the letter introduced in evidence from defendant.   She showed the letter to me, and asked me what she ought to do about it.   William Coffman was along.   She wanted to know what she had best

do ; I don't think I gave her any advice ; I don't remember what she did say ; she appeared to be somewhat troubled about it. She was not shedding tears, but she seemed like her mind was bothered."

We are of the opinion that the question was improper, and that the court erred in allowing the witness to answer it.

Before the appellee could recover she was compelled to establish two facts : (1) a marriage contract ; (2) its breach on the part of the appellant.

The question assumed that the appellant had refused to marry the appellee, and we can not say that the witness did not answer with reference to this assumption, nor can we say that the jury did not receive and consider the answer of the witness with that understanding.

If the jury accepted the answer of the witness as a confirmation of the assumption contained in the question, that the appellant had refused to marry the appellee, then only the one other question remained to be proved—the existence of the marriage contract.

But the declarations of the appellee having been made in the absence of the appellant, they were clearly incompetent. They were made two days after she regarded the contract as broken on appellant's part.

The evidence discloses that the appellee regarded the contract as broken when she received the letter, and that it was received on Friday. Although in that part of the evidence of the said witness which we have set out he stated that the conversation took place on Saturday, it is evident, from all of his testimony on that subject, that the conversation occurred on Sunday.

The declarations would have been incompetent had they been made before the alleged estrangement, for the reason that they were coupled with no act of the appellee indicating that she contemplated marrying the appellant. But had the declarations accompanied some act of the appellee which would have rendered them competent, if a part of the *res*

*gestæ,* having been made two days after the estrangement, they were incompetent for any purpose.

The rule declared by this court, as to the declarations and conduct of the female plaintiff in actions of this character, is as liberal as principle and precedent will justify; but such evidence is only allowed to prove her consent to the alleged marriage contract, and must relate to a time prior to the estrangement, or to the time when first informed that her anticipated husband will not marry her.   *King* v. *Kersey,* 2 Ind. 402; *Cates* v. *McKinney, supra; Wetmore* v. *Mell,* 1 Ohio St. 26; *Burnham* v. *Cornwell,* 16 B. Monroe, 284 (63 Am. Dec. 529, and note); *Moritz* v. *Melhorn,* 13 Penn. St. 331; *Leckey* v. *Bloser,* 24 Penn. St. 401.

Such evidence is admissible as a part of the *res gestæ,* and must, therefore, necessarily relate to the period of time which we have indicated.

We find no error in the ruling of the court admitting the testimony referred to in the fourth reason stated in the motion.   It was proper, in view of the rule as above stated.

For the error of the court in admitting the evidence given by James Minnick, as above indicated, the judgment must be reversed.

Judgment reversed, with costs.

Filed May 14, 1890.